UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on May 5, 2015

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No. 16-CR-_____ |
| | : | |
| | : | Grand Jury Original |
| v. | : | |
| | : | Violations: |
| | : | |
| **MICHAEL LAWRENCE ROSEBAR,** | : | 18 U.S.C. § 152(1) |
| | : | (Concealment of Bankruptcy |
| | : | Assets) |
| | : | 18 U.S.C. § 2 |
| **Defendant** | : | (Aiding and Abetting; Causing an |
| | : | Act to be Done) |
| | : | |
| | : | **FORFEITURE:** |
| | : | 18 U.S.C. § 981(a)(1)(c) |
| | : | 28 U.S.C. § 2461(c) |
| | : | 21 U.S.C. § 853(p) |

## INDICTMENT

The Grand Jury charges that:

### INTRODUCTION

At all times relevant to this Indictment:

### GENERAL ALLEGATIONS

### The Bankruptcy Process

1. A voluntary bankruptcy case is begun by the filing of a bankruptcy petition. The person who files that petition is a "debtor" under federal bankruptcy law. The process is conducted in a federal court and is governed by the United States Bankruptcy Code

("Bankruptcy Code"), which is found in Title 11 of the United States Code, and the Federal Rules of Bankruptcy Procedure.

2. Chapter 13 of the Bankruptcy Code provides debtors with regular income the ability to petition the United States Bankruptcy Court to reorganize and repay their debts under a plan of scheduled repayment approved by the Court. Under Chapter 13, the debtor proposes a repayment plan to make installments to creditors over three to five years. In order to file bankruptcy under Chapter 13, however, the debtor must meet certain eligibility requirements, including that the debtor's secured and unsecured debts do not exceed statutorily established limits ("Chapter 13 Debt Limits").

3. Chapter 11 of the Bankruptcy Code provides debtors in financial difficulty with an orderly method of court-supervised financial reorganization. In Chapter 11 proceedings, the debtor is granted an opportunity to negotiate with creditors, restructure liabilities, and emerge from bankruptcy with a plan confirmed by the bankruptcy court. A Chapter 11 bankruptcy is typically used to reorganize a business, including a business run by an individual as a sole proprietorship. A Chapter 11 case involving a sole proprietorship deals with both the business and personal assets of the owner-debtor.

4. In a Chapter 11 case the debtor maintains possession and management of his assets and income, and is referred to as a "debtor in possession" or DIP. The DIP has the position of a fiduciary, with the rights and powers of a trustee under other Chapters (except for certain investigative functions and duties of a trustee). The DIP's duties are set forth in the Bankruptcy Code and Federal Rules of Bankruptcy Procedure, and include accounting for property, examining and objecting to claims, and filing informational reports as required by the Court and the United States Trustee or bankruptcy administrator, such as monthly operating

reports. These reports are signed by the debtor under penalty of perjury. The United States Trustee, if one is appointed, is responsible for monitoring the compliance of the DIP with the reporting requirements.

5. Filing a bankruptcy petition creates a "bankruptcy estate," which is a collective reference to all legal or equitable interests of the debtor in property at the time of the bankruptcy filing. The estate includes all property in which the debtor has an interest, even if it is owned or held by another person. In a bankruptcy case under Chapter 11 where the debtor is an individual, income earned after the petition is filed and before the case is closed, dismissed, or converted to a case under another Chapter, becomes part of the bankruptcy estate of the debtor. The debtor is also required to close all bank accounts the debtor maintained prior to bankruptcy, and place his money and any post-petition income in a newly-created DIP bank account.

6. Under section 341(a) of the Bankruptcy Code, debtors in bankruptcy are required to attend one or more meetings of creditors ("341 Creditors Meetings"), at which the debtor is placed under oath by the United States Trustee and questioned about his financial affairs and the financial disclosures he has made in the case.

7. Bankruptcy provides debtors with an opportunity to obtain a fresh financial start through the discharges of their debts. A discharge depends upon the debtor's disclosure of a true and accurate picture of his financial affairs.

### Individuals, Entities, Accounts

8. Michael Lawrence Rosebar (the "Defendant") was a resident of Washington, D.C., and was married.

9. The Defendant presented himself as a home-improvement contractor, and operated as an unincorporated enterprise under the following names: a) EMR Construction

Contractors; b) ER Construction and Home Improvement; c) EMRC Construction; d) ER Construction; e) MLR Construction Contractors; and f) M.L. Rosebar and Associates.

10.  From in or about January 2009 to in or about December 2010 the Defendant maintained two DIP bank accounts at Wachovia National Bank ("Wachovia"), account numbers ending in XXXXXX4593 (checking) and XXXXXX4514 (money market or savings) (the "Wachovia DIP Accounts").

11.  From at least in or about September 2008, to in or about January 2012, the Defendant's wife maintained two bank accounts at Bank of America, NA ("Bank of America"), account numbers ending in XXXXXX9698 (checking) and XXXXXX3198 (savings). The Defendant was not an authorized joint holder on these accounts; they were solely the Defendant's wife's accounts.

## Bankruptcies

12.  On or about February 29, 2008, the Defendant and his wife filed a petition to commence a Chapter 13 bankruptcy case in the United States Bankruptcy Court for the District of Columbia, captioned *In re Erin Michelle Rosebar and Michael Lawrence Rosebar*, 08-00142 ("First Bankruptcy Case").

13.  On or about April 17, 2008, the First Bankruptcy Case was dismissed by the Court due to the Defendant and his wife's failure to obtain credit counseling within 180 days prior to filing their voluntary bankruptcy petition.

14.  On or about May 22, 2008, the Defendant filed a petition to commence a Chapter 13 bankruptcy case in the United States Bankruptcy Court for the District of Columbia, captioned *In re Michael Lawrence Rosebar*, 08-00345 ("Second Bankruptcy Case"). The Defendant's wife was not a petitioner in the Second Bankruptcy Case.

15. On or about July 21, 2008, the Second Bankruptcy Case was converted to a Chapter 11 case because the Defendant did not meet the Chapter 13 Debt Limits. On or about that same date, a United States Trustee was appointed in the Second Bankruptcy Case.

16. On or about August 14, 2008, as part of the Second Bankruptcy Case, the Defendant participated in a 341 Creditors Meeting along with certain creditors and the appointed United States Trustee. The Defendant was questioned by the United States Trustee and certain creditors. The Defendant stated that he had opened a DIP bank account at Bank of America, which was false. The United States Trustee instructed the Defendant that all of his earnings must be deposited into his DIP bank account, and any expenses he paid were to be paid out of that account. The United States Trustee further instructed the Defendant that he was not to deposit his money or earnings into his wife's bank accounts, and the Defendant stated that he understood that instruction.

17. On or about September 4, 2008, the Defendant participated in a continuing 341 Creditors Meeting along with certain creditors and the appointed United States Trustee. The Defendant was questioned by the United States Trustee and certain creditors. The Defendant admitted that he had not yet opened a DIP bank account. The Defendant stated he had attempted to open a DIP bank account but was delayed in doing so because he had lost his driver's license. The Defendant stated that he planned to open a DIP bank account at Bank of America shortly thereafter. The United States Trustee again instructed the Defendant that he must deposit all of his money and earnings into his DIP bank account, and not into his wife's bank accounts. The Defendant again stated that he understood that instruction.

18. The Defendant never opened a DIP bank account at Bank of America. Instead, he opened the Wachovia DIP Accounts.

19. On or about October 9, 2009, the Defendant submitted to the bankruptcy Court his Third Amended Chapter 11 Plan, which called for payment plans to the Defendant's various creditors. On or about March 16, 2010, the Court entered an order confirming the Defendant's Third Amended Chapter 11 Plan. Although obligated to do so, the Defendant filed no reports of income, expenses, and plan payments after confirmation of the Third Amended Chapter 11 Plan.

20. The Second Bankruptcy Case was in existence until on or about February 16, 2011, at which time it was dismissed by the Court upon motion of the United States due to the Defendant's failure to make payments under his confirmed bankruptcy plan. On or about February 23, 2011, the Defendant, or someone acting on his behalf, submitted a Motion to Reconsider the dismissal of the Second Bankruptcy Case. On or about March 1, 2011, the Court denied the Defendant's motion to reconsider.

## COUNTS ONE THROUGH TWENTY-SIX
### (CONCEALMENT OF ASSETS BELONGING TO BANKRUPTCY ESTATE; AIDING AND ABETTING AND CAUSING AN ACT TO BE DONE)
### (18 U.S.C. §§ 152(1) and 2)

21. Paragraphs 1 through 20 of this Indictment are realleged and incorporated by reference as if set out in full.

22. On or about the dates set forth below, and continuing through the dismissal of the Second Bankruptcy Case on or about February 16, 2011, the Defendant did knowingly and fraudulently conceal from a custodian, trustee, marshal, and other officer of the court charged with the control and custody of property, and, in connection with a case under Title 11, from creditors and the United States Trustee, the following property listed below belonging to the estate of a debtor (each concealment of property constituting a separate count of this indictment):

| Count | On or About Date Property Converted or Report Filed | Property – Payments From Customers for Home Improvement Services | Manner of Concealment |
|---|---|---|---|
| 1 | 08/04/2008 | $43,333 from customer R.L. | Defendant cashed $43,333 check at Industrial Bank. Defendant did not deposit this money in Wachovia DIP Accounts and report this money in bankruptcy. |
| 2 | 09/05/2008 | $25,000 from customers J.D. and E.S. | Defendant endorsed $25,000 check over to his wife; $20,000 deposited into his wife's checking account and $5,000 deposited into his wife's savings account. |
| 3 | 9/19/2008 | $43,000 from customer R.L. | Defendant endorsed $43,000 check over to his wife; money deposited into his wife's savings account. |
| 4 | 10/14/2008 | $2,500 from customer R.L. | Defendant cashed $2,500 check at Bank of America. Defendant did not deposit this money in Wachovia DIP Accounts and report this money in bankruptcy. |
| 5 | 10/24/2008 | $7,000 from customer R.L. | Defendant cashed $7,000 check at Bank of America. Defendant did not deposit this money in Wachovia DIP Accounts and report this money in bankruptcy. |
| 6 | 11/4/2008 | $39,000 from customer N.L | Defendant cashed $39,000 check at Industrial Bank. Defendant did not deposit this money in Wachovia DIP Accounts and report this money in bankruptcy. |
| 7 | 11/26/2008 | $1,000 from customer R.L. | Defendant cashed $1,000 check at Bank of America. Defendant did not deposit this money in Wachovia DIP Accounts and report this money in bankruptcy. |
| 8 | 12/9/2008 | $15,000 from customer R.L | Defendant cashed two $7,500 checks (a total of $15,000) at Bank of America. Defendant did not deposit this money into Wachovia DIP Accounts and report this money in bankruptcy. |

| | | | |
|---|---|---|---|
| 9 | 1/3/2009 | At least $35,395.71 from customer R.L. in August, 2008 | Defendant submitted to the U.S. Trustee and the Court an August, 2008 Monthly Operating Report on or about January 3, 2009, reporting income of $7,937.29 in August, 2008, despite receiving at least $43,333 from a customer in August, 2008. |
| 10 | 1/3/2009 | At least $57,061.47 from customers J.D., E.S., and R.L. in September, 2008 | Defendant submitted to the U.S. Trustee and the Court a September, 2008 Monthly Operating Report on or about January 3, 2009, reporting income of $10,938.53 in September, 2008, despite receiving at least $68,000 from customers in September, 2008. |
| 11 | 1/3/2009 | At least $3,077.47 from customer R.L. in October, 2008 | Defendant submitted to the U.S. Trustee and the Court an October, 2008 Monthly Operating Report on or about January 3, 2009, reporting income of $6,422.53 in October, 2008, despite receiving at least $9,500 from a customer in October, 2008. |
| 12 | 1/3/2009 | At least $28,470.92 from customers R.L. and N.L. in November, 2008 | Defendant submitted to the U.S. Trustee and the Court a November, 2008 Monthly Operating Report on or about January 3, 2009, reporting income of $11,529.08 in November, 2008, despite receiving at least $40,000 from customers in November, 2008. |
| 13 | 1/3/2009 | At least $5,120.92 from customer R.L. in December, 2008 | Defendant submitted to the U.S. Trustee and the Court a December, 2008 Monthly Operating Report on or about January 3, 2009, reporting income of $9,879.08 in December, 2008, despite receiving at least $15,000 from a customer in December, 2008. |
| 14 | 1/16/2009 | $5,000 from customer R.L. | Defendant cashed $5,000 check at Bank of America. Defendant did not deposit this money in Wachovia DIP Accounts and report this money in bankruptcy. |

| | | | |
|---|---|---|---|
| 15 | 1/20/2009 | $2,500 from customer R.L. | Defendant cashed $2,500 check at Bank of America. Defendant did not deposit this money in Wachovia DIP Accounts and report this money in bankruptcy. |
| 16 | 2/20/2009 | $44,000 from customer R.L. | Defendant instructed customer to make $44,000 check out to Defendant's wife; money deposited into his wife's checking account. |
| 17 | 4/6/2009 | At least $32,716.96 from customer R.L. in February, 2009 | Defendant submitted to the U.S. Trustee and the Court a February, 2009 Monthly Operating Report on or about April 6, 2009, reporting income of $11,283.04 in February, 2009, despite receiving at least $44,000 from a customer in February, 2009. |
| 18 | 4/20/2009 | $58,000 from customer R.L. | Defendant instructed customer to make $58,000 check out to Defendant's wife; money deposited into his wife's checking account. |
| 19 | 5/29/2009 | $4,200 from customer R.L. | Defendant cashed $4,200 check at Bank of America. Defendant did not deposit this money in Wachovia DIP Accounts and report this money in bankruptcy. |
| 20 | 7/13/2009 | $3,250 from customer D.A. | Defendant endorsed $3,250 check over to his wife; money deposited into his wife's checking account. |
| 21 | 8/3/2009 | At least $51,002.50 from customer R.L. in February, 2009 | Defendant submitted to the U.S. Trustee and the Court an April, 2009 Monthly Operating Report on or about August 3, 2009, reporting income of $6,997.50 in April, 2009, despite receiving at least $58,000 from a customer in April, 2009. |
| 22 | 8/18/2009 | $1,500 from customer R.L. | Defendant cashed $1,500 check at Bank of America. Defendant did not deposit this money in Wachovia DIP Accounts and report this money in bankruptcy. |

| 23 | 10/1/2009 | At least $4,200 from customer R.L. in May, 2009 | Defendant submitted to the U.S. Trustee and the Court a May, 2009 Monthly Operating Report on or about October 1, 2009, reporting income of $0 in May, 2009, despite receiving at least $4,200 from a customer in May, 2009. |
| --- | --- | --- | --- |
| 24 | 10/9/2009 | At least $3,250 from customers R.L. and D.A. in July, 2009 | Defendant submitted to the U.S. Trustee and the Court a July, 2009 Monthly Operating Report on or about October 9, 2009, reporting income of $60,000 in July, 2009, despite receiving at least $63,250 from customers in July, 2009. |
| 25 | 12/8/2009 | $2,000 from customer R.L. | Defendant cashed $2,000 check at Bank of America. Defendant did not deposit this money in Wachovia DIP Accounts and report this money in bankruptcy. |
| 26 | 1/4/2010 | $2,000 from customer R.L. | Defendant cashed $2,000 check at Bank of America. Defendant did not deposit this money in Wachovia DIP Accounts and report this money in bankruptcy. |

**(Concealment of Bankruptcy Assets in violation of Title 18, United States Code, Section 152(1), and Aiding and Abetting and Causing an Act to be Done, in violation of Title 18, United States Code, Section 2)**

### FORFEITURE ALLEGATION

23. Upon conviction of any of the offenses alleged in Counts One through Twenty-Six, the Defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to these offenses, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). The United States will also seek a forfeiture money judgment against the Defendant equal to the value of any property, real or personal, which constitutes or is derived from proceeds traceable to this offense.

24. If any of the property described above as being subject to forfeiture, as a result of

any act or omission of the Defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be divided without difficulty;

the Defendant shall forfeit to the United States any other property of the Defendant, up to the value of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United Sates Code, Section 2461(c), and Title 21, United States Code, Section 853(p))**

A TRUE BILL:

FOREPERSON

_____
ATTORNEY FOR THE UNITED STATES
IN AND FOR THE DISTRICT OF COLUMBIA